```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
JEAN DERONETTE

                                                          05 CV 5275 (SJ)
                Plaintiff,
                                                          MEMORANDUM
     - against -                                          AND ORDER

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT, KINGS
COUNTY DISTRICT ATTORNEY'S
OFFICE, and LUC PIERRE,

                Defendants.
------------------------------------------------------X
```

A P P E A R A N C E S:

MALLILO & GROSSMAN, P.C.
163-09 Northern Boulevard
Flushing, NY 11358
By:   Jack L. Grossman
Attorney for Plaintiff

NEW YORK CITY LAW DEPARTMENT
SPECIAL FEDERAL LITIGATION DIVISION
100 Church Street
New York, NY 10007
By:   Sabrina M. Tann, Esq.
Attorney for Defendants

K.C. OKOLI, ATTORNEY AT LAW
330 Seventh Avenue, 15th Floor
New York, NY 10001
By:   K.C. Okoli
Attorney for Defendant Luc Pierre

JOHNSON, Senior District Judge:

Plaintiff Jean Deronette ("Plaintiff") brings this action alleging that the City of

New York, the New York City Police Department ("NYPD"), the Kings County

District Attorney's Office, and Kings County Assistant District Attorney Luc Pierre (collectively "Defendants") violated his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and New York State tort law. Presently before the Court is Pierre's Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion to Dismiss"). For the reasons set forth herein, Pierre's Motion to Dismiss is GRANTED and Plaintiff is granted 30 days from the date of this Memorandum and Order to replead the First, Second, Fourth, Fifth, and Seventh Causes of Action.

**FACTUAL BACKGROUND**[1]

On September 5, 2004, defendant Luc Pierre, a Kings County Assistant District Attorney ("ADA") and a church pastor, allegedly observed Plaintiff engaging in the following conduct within 100 feet of Pierre's church during Sunday Services: (1) putting multiple flyers on Pierre's automobile and on surfaces in the vicinity of the

---

[1] Plaintiff was arrested and charged in connection with his September 4 and 5, 2004, encounters with Pierre. The Kings County criminal complaint subsequently brought against Plaintiff describes those encounters. Plaintiff includes and cites to the criminal complaint in his motion papers. (Pl.'s Aff. In Opp., ¶ 6, Exh. 2.) However, Plaintiff does not allege any facts describing his encounters with Pierre, other than to say that Pierre attempted to have him arrested on September 4 for "putting flyers on vehicles and putting up posters." (Compl. at ¶ 18.) Therefore, the Court's summary of those encounters, contained in the first paragraph of the factual background section of this Memorandum and Order, is based on the facts alleged in the criminal complaint. The Court notes that it recites those facts, *without accepting them as true,* for the limited purpose of providing general background regarding Plaintiff's claims. The Court also notes that it must accept as true Plaintiff's allegation that the charges brought against him were dismissed. (Id. at ¶ 36.)

church, (2) yelling at the church Deacon, and (3) yelling at Pierre and parishioners inside the church. (Pl.'s Aff. in Opp., ¶ 6, Exh. 2., at 1.) The subject of the flyers was the fact that Pierre "had criminal charges falsely brought against [Plaintiff] in a previous criminal complaint."[2] (Id.) Plaintiff's conduct caused Sunday Services at the church to be stopped that day. (Id.) On the previous day, Plaintiff and several other males were allegedly observed arguing with church parishioners, and placing flyers similar to those mentioned above on Pierre's automobile. (Id. at 2.)

Plaintiff alleges that Pierre attempted to have him arrested on September 4, 2004, for putting up flyers and posters, although this is not the "false arrest" of which Plaintiff now complains. (Compl. at ¶ 18.) Plaintiff does not allege any other facts describing the events of September 4 and 5, 2004.

On November 22, 2004, "Detective Walker of the 67th Precinct Squad" of the NYPD arrested Plaintiff in connection with the events of September 4 and 5, 2004.[3] (Compl. at ¶ 18.) On November 23, 2004, Kings County ADA Jeff Davis filed a criminal complaint charging Plaintiff with Disorderly Conduct in violation of New York Penal Law § 240.20(4), and Disruption or Disturbance of Religious Service in violation of New York Penal Law § 240.21. (Pl.'s Aff. in Opp., ¶ 6, Exh. 2.) Pierre served as the informant for the criminal complaint. (Id.) The charges were later dismissed. (Compl. at ¶ 36.)

---

[2] Plaintiff does not describe the charges Pierre previously brought against him.
[3] Plaintiff provides no additional identifying information for Detective Walker.

3

On November 11, 2005, Plaintiff filed a Complaint against Defendants alleging that his arrest and the charges brought against him, in connection with the events of September 4 and 5, 2004, violated his rights under federal and state law. Plaintiff named Pierre as a defendant in the First, Second, Third, Fourth, Fifth, and Seventh Causes of Action.[4] On February 6, 2006, Pierre filed a Motion to Dismiss the Complaint based on the following grounds: (1) as an ADA, Pierre is entitled to absolute and/or qualified immunity, and (2) the Complaint fails to state a claim for which relief may be granted.

## JURISDICTION

The Court has jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## STANDARD OF REVIEW

Under Fed. R. Civ. Pro. 8(a)(2), a plaintiff's complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." The statement of the claim must "give the defendant fair notice of what the plaintiff's claim

---

[4] Pierre is not named as a defendant in Plaintiff's Sixth Cause of Action, for the New York tort of negligent hiring and retaining, or Plaintiff's Eighth Cause of Action, for violation of 42 U.S.C. § 1983 and the First, Fourth and Fourteenth Amendments to the United States Constitution.

is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

In considering a motion to dismiss a complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Bold Elec., Inc. v. City of N.Y., 53 F.3d 465, 469 (2d Cir.1995). Dismissal is appropriate only where it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See id. The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support his claims. See Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995). A court must confine its consideration of a motion to dismiss "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991).

Even under the lenient pleading requirement of Rule 8(a)(2), conclusory allegations are insufficient to withstand a motion to dismiss. See Manos v. Geissler, 377 F.Supp.2d 422, 425 (S.D.N.Y.2005). Courts need not accept as true pleadings expressing legal conclusions, speculation and unsubstantiated allegations "so broad and conclusory as to be meaningless." Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 120 (2d Cir.1982); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir.2002) (while the court must construe factual allegations in the light most

favorable to the plaintiff, the court is not required to accept plaintiff's legal conclusions). "[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." In re Livent, Inc. Noteholders Sec. Litig., 151 F.Supp.2d 371, 405-06 (S.D.N.Y.2001). Finally, dismissal is generally appropriate in cases in which "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988).

## DISCUSSION

### A. Pierre's Immunity Defenses

#### 1. Absolute Immunity

As a preliminary matter, Pierre claims that his Motion to Dismiss should be granted because as an ADA, he is entitled to absolute immunity.[5] It is well settled that a state prosecutor acting within the scope of his duties in initiating and pursuing a criminal prosecution is protected from suits under § 1983 by the doctrine of absolute

---

[5] To the extent that Plaintiff seeks damages against Pierre in his official capacity, the Eleventh Amendment to the United States Constitution shields Pierre from liability. See Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir.1997). Although Plaintiff's Complaint is exceedingly vague, it appears that Plaintiff's claims have been brought against Pierre in his individual capacity, rather than his official capacity. Accordingly, the Eleventh Amendment does not provide a defense to Plaintiff's claims.

immunity. See Buckley v. Fitzsimmons, 509 U.S. 259, 272-73 (1993); Imbler v. Pachtman, 424 U.S. 409, 424 (1976). Absolute immunity is a defense to not only Plaintiff's claims asserted under § 1983, but also Plaintiff's state law claims for false arrest, see Goncalves v. Reynolds, 198 F.Supp.2d 278, 282 (W.D.N.Y.2001), false imprisonment, see Posr v. Doherty, 944 F.2d 91, 96 (2d Cir.1991) (false imprisonment "synonymous" with false arrest), malicious prosecution, see Shmueli v. City of N.Y., 424 F.3d 231, 238 (2d Cir.2005), abuse of process, see Arum v. Miller, 331 F.Supp.2d 99, 112 (E.D.N.Y.2004), and libel and slander, see Burns v. Reed, 500 U.S. 478, 489-90 (1991) (defamation in connection with judicial proceedings), Yaselli v. Goff, 12 F.2d 396, 401-402 (2d Cir.1926), aff'd, 275 U.S. 503 (1927) (same), World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F.Supp.2d 514, 531 n.8 (S.D.N.Y.2001) (same requirements for defamation claims of libel and slander, except libel requires written publication and slander requires oral statement). But see Barr v. Abrams, 810 F.2d 358, 362 (2d Cir.1987) (distinguishing between prosecutor procuring arrest warrant, which may be protected by absolute immunity, and executing arrest warrant, which probably is only protected by qualified immunity). In fact, a prosecutor arguably enjoys even greater immunity from state law claims than from federal claims brought under § 1983. See Coakley v. Jaffe, 49 F.Supp.2d 615, 627 n.11 (S.D.N.Y.1999) ("While a prosecutor receives only qualified immunity from § 1983 claims where his conduct is investigative in nature . . . there is some authority for the proposition that a prosecutor is entitled to absolute immunity from state law claims based on

7

investigatory conduct.") (citation omitted).

To determine whether absolute immunity exists, courts apply a "functional approach," examining "the nature of the function performed, not the identity of the actor who performed it." Buckley, 509 U.S. at 269 (citations omitted). Absolute immunity applies to the prosecutor's decision regarding whether to institute a prosecution, and his performance of litigation-related duties. See Ying Jing Gan v. City of N.Y., 996 F.2d 522, 530 (2d Cir.1993). A prosecutor is also immune for conduct in preparation for those functions, such as evaluating evidence for presentation at trial, see Buckley, 509 U.S. at 273, or determining which offenses to charge, see Ying Jing Gan, 996 F.2d at 530. By contrast, absolute immunity is not available when a prosecutor undertakes conduct that is not "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430. Thus, when a prosecutor acts in an investigative or administrative capacity rather than a prosecutorial one, absolute immunity is not available. See Hill v. City of N.Y., 45 F.3d 653, 661 (2d Cir. 1995).

Courts may consider absolute immunity on a 12(b)(6) motion to dismiss when facts establishing the defense appear directly in the complaint. See Hill, 45 F.3d at 663 (absolute immunity may be decided on 12(b)(6) motion when facts establishing the defense may be "gleaned from the complaint"); Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir.1983) (determining absolute immunity on 12(b)(6) motion). Moreover, district courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery. See Mitchell v. Forsyth,

472 U.S. 511, 526 (1985); United States v. Colbert, No. 87 Civ. 4789, 1991 WL 183376 at *4 (S.D.N.Y. Sept.11, 1991). This is because "[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." Imbler, 424 U.S. at 419 n.13.

In this case, to determine whether Pierre is entitled to absolute immunity, the Court must look to whether Pierre's conduct as alleged in the Complaint falls within the scope of Pierre's prosecutorial functions.[6] On the one hand, Plaintiff alleges that

---

[6] Plaintiff alleges in his Complaint that:

> Each and all of the acts of the defendants alleged herein were done by the defendants, their agents, servants and employees, and each of them not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, the City of New York, and under the authority of their office as police officers and assistant district attorneys of said state, county and city.

(Compl. at ¶ 12.) Plaintiff is thus alleging that Pierre was acting under the color of law, and under the authority of his office as an ADA. Furthermore, for each Cause of Action in which Pierre is named as a defendant, Plaintiff directly refers to Pierre in his capacity as an ADA. (Id. at ¶¶ 20, 25-26, 30, 36, 41, 51, 52.) If Plaintiff's allegations are accepted at face value, Pierre probably would enjoy immunity because his alleged conduct was performed as part of his ADA duties.

After filing his Complaint, Plaintiff subsequently reversed positions. In his Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Plaintiff alleges that the claims asserted in his Complaint "do not arise from [Pierre's] conduct as a district attorney, but rather from [his] conduct as a complaining witness." (Pl's. Memo. in Opp. at 1.) Furthermore, in his Affirmation in Opposition, Plaintiff alleges that "*none* of the claims filed by plaintiff against [Pierre] involve defendant acting in his official prosecutorial capacity as a District Attorney. Rather, plaintiff's claims arise from [Pierre's] role as a complaining witness." (Pl.'s Aff. in Opp. at ¶ 6.) (Emphasis in original.) Therefore, Plaintiff's argument that "*none* of the claims" involve Pierre acting as an ADA directly contradicts his allegation in the Complaint that "all of the acts" were done by Pierre as an ADA.

Pierre "abused his authority as an Assistant District Attorney and facilitated the arrest of claimant by forcing" Detective Walker to arrest him in connection with the incidents of September 4 and 5, 2004. (Compl. at ¶ 18.) Clearly, Pierre would have to be acting as an ADA if he "abused his authority" and was "forcing" Plaintiff's arrest. Plaintiff's allegation that Pierre "informed [Walker] that he was an [ADA] and insisted that [Plaintiff] be arrested and put through the system" again implies that Pierre was acting as an ADA. (Id.) Similarly, Plaintiff alleges that Pierre "facilitated the arrest" of Plaintiff and "commenced a criminal proceeding against [Plaintiff] when he facilitated the arrest of [Plaintiff] on November 22, 2004." (Id. at ¶¶ 30, 36.) Plaintiff even asserts that "all of the acts of [Pierre] were done . . . not as [an individual], but under the color and pretense of" city and state law, and "under the authority of [his] office as . . . assistant district attorney[]"and had "acted under color of state law." (Id. at ¶¶ 12, 26.) These allegations strongly suggest that Pierre was wielding his power as an ADA to prosecute a criminal case against Plaintiff.

On the other hand, Plaintiff does not allege that Pierre had a role in actually preparing the criminal complaint brought against him. In fact, Kings County ADA Jeff

---

Although Plaintiff offers flatly contradictory characterizations of Pierre's conduct, to the extent that allegations in the Complaint regarding Pierre's conduct amount to legal conclusions, they are not dispositive to resolving Pierre's Motion to Dismiss. See Smith, 291 F.3d at 240. Similarly, legal argument in Plaintiff's Opposition is not relevant to the Court's decision. Instead, the Court must look to only the facts alleged in the Complaint. See Leonard F., 199 F.3d at 107. However, the Court mentions Plaintiff's contradictory arguments here to underscore the confusing nature of Plaintiff's claims.

Davis, and not Pierre, filed the complaint. (Pl.'s Aff. in Opp., ¶ 6, Exh. 2, at 2.) Plaintiff also does not allege any conduct on the part of Pierre that is otherwise typical of an ADA engaged in the prosecution of a criminal case. Therefore, Plaintiff's allegations might suggest Pierre's role was primarily that of a normal citizen who had witnessed, or been the victim of, an alleged crime. And assuming Pierre was merely an informant for the criminal complaint, he would not qualify for absolute immunity. See Kalina v. Fletcher, 522 U.S. 118, 130-31 (1997) (prosecutor not entitled to absolute immunity with respect to actions in executing certification for determination of probable cause, because prosecutor's role is same as that of normal witness).

The Court recognizes that to the extent it can resolve an absolute immunity claim at the pleadings stage, it is strongly encouraged to do so. However, in this case, the allegations in the Complaint do not provide the Court with a sufficient basis for ruling on Pierre's absolute immunity defense. On the contrary, for reasons discussed in greater detail below, it is simply not possible to discern the nature of Plaintiff's claims, let alone Pierre's role in connection with those claims, based on the meager and confusing allegations in the Complaint. Therefore, the Court cannot grant Pierre's Motion to Dismiss on the basis of absolute immunity at this point.

### 2. Qualified Immunity

When a prosecutor "performs functions normally associated with a police investigation" he loses his absolute immunity from liability. Richards v. City of N.Y.,

No. 97 Civ. 7990, 1998 WL 567842, at *2 (S.D.N.Y. September 3, 1998) (citing Burns v. Reed, 500 U.S. 478, 493 (1991)). Under such circumstances the doctrine of qualified immunity protects the prosecutor from liability, so long as his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell, 472 U.S. at 526 (emphasis in original). Accordingly, courts should resolve a qualified immunity at the earliest stage possible, and preferably before discovery. See Francis v. Coughlin, 849 F.2d 778, 780 (2d Cir.1988).

Pierre claims that even if he is not protected by absolute immunity, his Motion to Dismiss should be granted on the basis of qualified immunity. However, for the reasons discussed in greater detail below, it is impossible to discern Pierre's role in connection with Plaintiff's arrest and charging based on the meager allegations in the Complaint. Therefore, Pierre's Motion to Dismiss cannot be granted on the basis of qualified immunity.

**B.**     **Plaintiff's Failure to State a Claim for Relief**

   **1.**     **Intentional and/or Negligent Infliction of Emotional Distress**

Pierre's Third Cause of Action is for intentional and/or negligent infliction of emotional distress. Under New York law, intentional infliction of emotional distress is

a theory of recovery that is to be invoked only as a last resort, when other tort remedies are not available.  See Thomas v. County of Putnam, 262 F.Supp.2d 241, 251 (S.D.N.Y.2003); E.E.O.C. v. Die Fliedermaus, 77 F.Supp.2d 460, 472 (S.D.N.Y.1999) (recognizing that New York courts routinely dismiss intentional infliction of emotional distress claims where plaintiffs have also asserted a defamation claim arising from the same conduct) (citing New York cases).  Accordingly, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability."  Hansel v. Sheridan, 991 F.Supp. 69, 75 (N.D.N.Y.1998) (citing New York cases).  Similarly, a claim for negligent infliction of emotional distress should be dismissed where the conduct for the underlying claim may be redressed by way of traditional tort remedies.  See Druschke v. Banana Republic, Inc., 359 F.Supp.2d 308, 315 (S.D.N.Y.2005) (dismissing negligent infliction of emotional distress claim that is duplicative of tort claims for battery, false arrest, and malicious prosecution).

The conduct complained of in Plaintiff's Complaint is clearly encompassed in Plaintiff's claims for false arrest, false imprisonment, malicious prosecution, abuse of process, and libel and slander.  Therefore, Pierre's Motion to Dismiss is granted as to Pierre's claims for intentional and/or negligent infliction of emotional distress, and those claims are dismissed with prejudice.

### 2. Remaining Claims Against Pierre

Pierre argues that even if he is not entitled to immunity, his Motion to Dismiss should be granted because Plaintiff has merely made conclusory allegations that do not, even under the liberal federal pleading standards, provide notice of the claims against Pierre. For Plaintiff's Complaint to withstand Pierre's Motion to Dismiss, it simply must provide Pierre with fair notice as to the nature of the claims being brought against him, and the grounds on which they rest. See Fed. R. Civ. Pro. 8(a)(2); Swierkiewicz, 534 U.S. at 512. However, Plaintiff fails to clear this low bar.

Plaintiff's Complaint is exceedingly muddled, vague, and conclusory. The core factual predicate for Plaintiff's Complaint consists of four sparse allegations. First, Plaintiff alleges that "[o]n November 22, 2004, Luc Pierre, who is an ADA for the County of Kings, abused his authority as an [ADA] and facilitated the arrest of [Plaintiff] by forcing Detective Walker of the 67th Precinct Squad to effect an arrest upon [Plaintiff] after said detective informed Luc Pierre that the matter did not warrant an arrest." (Compl. at ¶ 18.) Plaintiff does not allege where, why, or how Pierre allegedly forced Walker to arrest him, nor does he allege what "matter" was disputed. Second, Plaintiff alleges that Pierre "informed the detective that he was an [ADA] for Kings County and insisted that the claimant be arrested and put through the system." (Id.) Plaintiff provides no further context for this allegation. Third, Plaintiff alleges that "[p]rior to said arrest, and on or about September 4, 2004, Luc Pierre, who is also a pastor at a church, attempted to have [Plaintiff] arrested for putting flyers on vehicles

and putting up posters." (Id.) Plaintiff does not allege any additional facts regarding the events that led to the attempted arrest, in what manner an attempted arrest was made, who if anyone other than Pierre was involved in the attempted arrest, or even whether he actually was engaged in the conduct for which Pierre attempted to have him arrested. In fact, Plaintiff never denies engaging in the conduct alleged in the criminal complaint regarding his encounters with Pierre on September 4 and 5, 2004. Finally, Plaintiff alleges that Pierre "commenced a criminal proceeding against [Plaintiff] when he facilitated the arrest of [Plaintiff] on November 22, 2004." (Id. at ¶ 36.) Again, no further context is provided for this allegation. Collectively, these thin allegations do not establish the basis for Plaintiff's claims, particularly with regard to the extent and nature of Pierre's alleged involvement in Plaintiff's arrest and prosecution.

The remainder of Plaintiff's Complaint consists of a series of vague and conclusory statements. For example, Plaintiff alleges that Pierre "caused false, inaccurate and misleading information to be placed into the Complaint brought against [Plaintiff], which resulted in his arrest of November 22, 2004." (Compl. at ¶ 18.) Plaintiff does not discuss what this alleged false information was, when it was provided, to whom it was provided, in what context it was provided, or why it was false. Plaintiff alleges that Pierre "engaged in libel and slander of [Plaintiff] in making false statements to [Walker] that resulted in the arrest of [Plaintiff]." (Id.) Again, Plaintiff does not allege what these alleged false statements were, when they were made, the context in which they were made, or why they were false. Plaintiff's

Complaint is littered with such unsubstantiated allegations. Strangely, Plaintiff also provides almost no description of the events of September 4 and 5, 2004. These events are crucial to understanding why and how Plaintiff was arrested and charged, and the basic nature of Pierre's involvement in this process.

In sum, Plaintiff never sets forth a short and plain statement of his claims, and Pierre's allegedly unlawful conduct in connection with those claims. Instead, Plaintiff paints a muddled and incomplete picture of Pierre's role in connection with Plaintiff's arrest and prosecution. Because Pierre does not have fair notice of Plaintiff's claims and the grounds upon which they rest, Pierre's Motion to Dismiss is granted as to Plaintiff's claims for false arrest, false imprisonment, malicious prosecution, abuse of process, and libel and slander.

### C. Leave to Replead

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991). Under Fed. R. Civ. Pro. 15(a), "leave [to amend] shall be freely given when justice so requires." Although Plaintiff's Complaint is deficient, Plaintiff may be able to allege facts that would entitle him to relief for his claims for false arrest, false imprisonment and § 1983, malicious prosecution, abuse of process, and libel and slander. Therefore, the Court grants Plaintiff leave to replead those claims within 30 days from the date of this Memorandum and Order.

The Court cautions Plaintiff that if he repleads, he should not merely reiterate the conclusory allegations stated in the Complaint. Instead, he should provide a short and plain statement of the claim showing that he is entitled to relief, and his statement should provide Pierre with fair notice of the claims and the grounds upon which they rest. At that point, the Court will be in a better position to decide whether Pierre is entitled to absolute or qualified immunity.

## **CONCLUSION**

Based on the foregoing, Pierre's Motion to Dismiss is GRANTED.

Plaintiff's claims against Pierre for intentional and/or negligent infliction of emotional distress are DISMISSED WITH PREJUDICE.

Plaintiff's claims against Pierre for false arrest, false imprisonment and § 1983, malicious prosecution, abuse of process, and libel and slander are DISMISSED WITH LEAVE TO REPLEAD within 30 days from the date of this Memorandum and Order.

SO ORDERED.

DATED:   March _27_, 2007           STERLING JOHNSON_____
         Brooklyn, New York          Senior U.S.D.J.